(No. 35453.—

*In re* GEORGE XAVIER ABBAMONTO, Attorney, Respondent.

*Opinion filed March 31, 1960.*

CHARLES LEVITON, of Chicago, *amicus curiae*.

CHARLES D. STEIN, of Chicago, (GOTTLIEB AND SCHWARTZ, of Chicago, of counsel,) for respondent.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The board of managers and committee on grievances of the Chicago Bar Association, as commissioners of this court under Rule 59, filed a report recommending that George Xavier Abbamonto, an attorney, be suspended from the practice of law for a period of five years. Respondent filed exceptions.

The report is based upon two separate complaints, each involving the issuance of a check with insufficient funds to cover it. The facts are not in dispute. On and prior to August 5, 1958, respondent maintained a law office in Franklin Park, Illinois. At the same location he also conducted a real-estate business called the Franklin Park Realty Company, and employed a saleslady, Mrs. Stark, whose duties included the acceptance of earnest money deposits. As to the first count the evidence shows that on the date mentioned, one Elmer Jorgensen visited the real-estate office, where he spoke to Mrs. Stark about a house listed with respondent for sale. He then executed an offer to purchase the house, and delivered a check in the amount of $1,000 as earnest money. The check was payable to the order of Franklin Park Realty, and was subsequently endorsed by the realty company and by respondent. It was paid through clearings on August 12, 1958.

. The offer to purchase was subject to the condition that Jorgensen receive possession on or before September 1, 1958. Several days after he signed it he telephoned Mrs. Stark, who advised him that she had been unable to contact the owners of the house because they were away on vacation. She requested him to wait until they returned, but he refused and insisted on immediate return of the earnest money. Mrs. Stark informed respondent of the demand, whereupon he gave her a check payable to the order of Elmer Jorgensen in the amount of $1,000, which she delivered to the latter's office on a Saturday. In the afternoon of that day he telephoned her saying the check was no good, whereupon she advised him that respondent said he was going to the bank and deposit money on the following Monday. Jorgensen thereafter took the check to the bank three times in unsuccessful efforts to collect. He also telephoned respondent, who promised to replace the check with a certified one but failed to do so. After the check was twice returned for insufficient funds it was finally returned marked "account closed." Jorgensen thereafter filed a complaint with the committee on inquiry, and on March 24, 1959, after hearings had begun thereon, respondent made restitution and obtained a release of all claims.

The facts under count 2 reveal that B. F. Schultz, an excavator, retained an attorney named Robert F. Fuchs to collect an indebtedness he claimed was due for work performed for the Ekallilly Corporation. Fuchs caused a notice of mechanic's lien to be served on the corporation, and thereafter received a telephone call from respondent, who identified himself as an attorney and officer of the company. Respondent also advised Fuchs that he had an interest in the corporation. He contended that the notice of lien was defective, and made an unsuccessful attempt to settle the matter. An agreement was finally reached to settle the claim for $1,000, $500 of which was to be paid in cash and $500 in the form of a note. On or about May

9, 1958, Fuchs and respondent met to consummate the settlement in Fuchs's office. Respondent was given a release of the mechanic's lien, and he thereupon tendered his personal check in the sum of $500. When Fuchs asked why the check was not certified, respondent replied that he could take his word as a fellow lawyer that the check was good. Fuchs also delivered to respondent the promissory note prepared by Fuchs for the signatures of respondent and certain other persons. Respondent took the note with him, saying he would have it properly signed. It was never brought back to Fuchs, and the check was returned from the bank upon which it had been drawn, marked "Not Sufficient Funds." When Fuchs called respondent about it, the latter said it was a bookkeeping error and advised him to put the check through again. Fuchs did so, and the check came back a second time with a slip marked "Account closed." In the meantime the release was filed, and title to the property was cleared of the lien. On March 24, 1959, during the course of the present hearings, respondent made restitution by completing the $500 payment and delivering the note executed by the parties thereto.

Seeking to void disciplinary action respondent urges, as to count I, that no attorney-client relationship was involved; and as to both counts, that the evidence fails to show he knew or should have known the checks would be dishonored by the bank. It is argued that in the absence of proof of dishonest motives or corrupt intent, suspension is not warranted; and that a lawyer will not be subjected to discipline merely upon suspicious circumstances. We cannot accept the contentions on the record before us, nor are the rules relied upon applicable here. On the undisputed facts respondent converted the $1,000 payment entrusted to him by Jorgensen as earnest money in an offer to purchase real estate. Realizing there was no chance of the sale being consummated, respondent issued to Jorgensen his personal check which was twice returned for insufficient

funds and was finally returned with the notation that the account had been closed. Respondent did not testify at the hearing, nor does the record contain any evidence to explain or justify the conduct. Under such circumstances the conclusion is inescapable that the money was not properly held for the purpose for which it was received, but was misapplied to other uses.

Respondent's conduct in his dealings with attorney Fuchs is equally reprehensible. He obtained a release of mechanic's lien after giving express assurance that his personal check was good and that the promissory note would be executed and returned. As in the Jorgensen matter, the check came back marked not sufficient funds and was later returned because the account had been closed. Nothing was done, apparently, to make the check good, or to obtain signatures on the promissory note, until many months later and after these disciplinary proceedings had been instituted. In view of the representation that the check was good, and the failure to account until after pressure was brought, we think respondent's actions cannot be attributed merely to a fluctuating balance in his account or to an inadvertent overdraft but were motivated by improper purposes.

This court has repeatedly held that the wrongful conversion by an attorney of funds placed in his hands for a specific purpose involves moral turpitude and is a flagrant violation of his duties sufficient to warrant disbarment. (*In re Ashbach*, 13 Ill.2d 411; *In re Thomson*, 3 Ill.2d 308; *In re Rosenberg*, 413 Ill. 567.) Neither financial difficulties nor the making of restitution after complaint has been filed affords any excuse for such acts. It is not necessary that the acts for which an attorney is subject to discipline be performed in the discharge of professional duties. Misconduct sufficient to warrant suspension or disbarment may be shown by acts not occurring in the course of his professional duties but in a private or business capacity. (*People ex rel. Chicago Bar Association* v. *Meyerovitz*,

278 Ill. 356.) In the proceeding at bar there is no conflict in the evidence, and no excuse or explanation is offered for the failure to make good the checks on demand. The record does not contain direct evidence as to whether such failure was the result of dishonest motives, or whether it was caused by carelessness or financial difficulties, but in either case there was an inexcusable violation of the obligations of an attorney. It is vital to the well-being of society that an attorney, who is an officer of the court and a part of our judicial system, should maintain the most scrupulous care in conducting his professional and business affairs. (*In re Clark,* 8 Ill.2d 314.) The public as well as his clients and the courts have an interest in his integrity and are entitled to require that he shun even the appearance of any fraudulent design or purpose. Respondent's conduct, as shown in the two specifications before us, constitutes a gross dereliction of duty, tending to bring the profession of law into disrepute.

Upon a consideration of all the facts and circumstances shown, we think the recommendation of the commissioners that respondent be suspended is appropriate. We severely reprimand and censure him for his unprofessional conduct, and respondent is hereby suspended from the practice of law in this State for a period of five years.

*Respondent censured and suspended.*