**STATE of Oklahoma ex rel. OKLAHOMA
BAR ASSOCIATION, Complainant,**

v.

**Whit PATE, Respondent.**

**S.C.B.D. No. 2124.**

Supreme Court of Oklahoma.

Sept. 12, 1967.

Rehearing Denied Nov. 14, 1967.

Wayne Campbell, Special Trial Counsel as designated by the Board of Governors, Delmar Stagner, Special Trial Counsel designated by the Board of Governors, Jack A. Swidensky, General Counsel, Oklahoma City, for complainant.

Mike Sullivan, Alpheus Varner, Poteau, for respondent.

IRWIN, Vice Chief Justice.

A complaint was duly filed by the Oklahoma Bar Association against the respondent, Whit Pate, charging him with violation of the Canons of Professional Ethics and with unprofessional conduct.

A trial was conducted by the trial examiner and respondent did not personally appear or testify but was represented by counsel. Respondent filed no answer or response to the complaint. Testimony was taken and respondent introduced various affidavits as to his standing and reputation as a member of the Bar of Oklahoma. The trial examiner made his report and recommendations to the Board of Governors of the Oklahoma Bar Association and the same were approved by such board. Thereafter, the Oklahoma Bar Association pursuant to the direction of the Board of Governors, recommended that respondent be disbarred from the practice of law in Oklahoma and his name be stricken from the roll of attorneys, and that the cost of the transcript and proceedings be assessed against respondent. The matter is now before this Court for study and review.

In disciplinary proceedings the rules provide that the complaint "shall set forth the facts constituting the alleged misconduct". The complaint filed against respondent is based upon two statements or affidavits executed by respondent on September 19, 1964, and on November 24, 1964, and the circumstances surrounding their execution. It is directed at the inconsistency of the statements, i. e., that both of the statements can not be true and that one of the statements must be false.

The September 19, 1964, statement was subscribed and sworn to before a notary public and signed by two witnesses. In this statement, respondent said that in September, 1960, he delivered a certain sum of money, in cash, to two (named) members of the Oklahoma Legislature; that in January, 1961, he once again delivered to each of them additional cash; that the basis for his delivering this money to these two men was because they had agreed with some individuals whom he represented to put through the 1961 session of the Oklahoma Legislature a bill legalizing parimutuel horse and dog racing in Oklahoma; that the bill in question did not pass and the people he represented came to Oklahoma City and they (including respondent) con-

fronted one of the named legislators and he promised to make another effort; that * * * (a named person) was associated with him and accompanied him to Memphis in September of 1960, when he picked up the first money and that he flew to Memphis by himself in January of 1961, to obtain the second payment; that the bill failed to pass and the venture was abandoned; and that he was giving the statement to * * * a reporter for * * * (a newspaper) and was given as a protection to the reporter and his newspaper in the event that anyone mentioned in the statement should file a libel action against the reporter and his newspaper and the "purpose of the statement is to make sure that I will say at any civil trial involving such libel action, the same things I say now".

The affidavit of November 24, 1964, was subscribed and sworn to before a notary public. In this affidavit respondent stated that there had been considerable gossip and rumor and some newspaper stories inferring or stating that he had given or promised to give some members of the 1961 Oklahoma Legislature, moneys in exchange for their support of legislation allowing horse and/or dog racing and parimutuel betting in Oklahoma; that these rumors, statements or stories are false; that he did not in 1961 or any other time pay or offer to pay any member or former member of the Oklahoma Legislature, or anyone in their behalf any money for their support of legislation; that he did lobby for passage of legislation permitting or legalizing horse and/or dog racing and parimutuel betting in Oklahoma but did not pay or attempt to pay any member, either directly or indirectly, for his support or vote for this legislation, or any other legislation.

In respondent's reply brief it is argued that there is no conflict between the statement of September 19, 1964, and the statement of November 24, 1964, and that "there being no conflict, then a fortiori the case for the Bar Association completely disintegrates in that their whole case is based on the purported conflict".

In our opinion, a cursory examination of the two instruments in question disclose that they are directly in conflict and are irreconcilable and inconsistent as "I did" and "I did not".

If the general statements contained in the first statement are true, it necessarily follows that the statements contained in the last statement are untrue. By the same token, if the last statement is true, the statements contained in the first statement could not be true. It necessarily follows that both statements can not be true and that one of the statements is false. The two legislators named in the September 19, 1964, statement appeared as witnesses before the trial examiner and both unequivocally denied the truth and veracity of the statements contained in such statement.

Relying upon the two statements and the circumstances surrounding their execution, it was alleged in the complaint that the statement of September 19, 1964, was signed and delivered to the reporter, known by the respondent to be a reporter, with the intent and purpose of inducing the newspaper to publish the matters stated as though they were true facts. It was also alleged that the respondent signed and delivered the affidavit of November 24, 1964, to a certain named attorney for a consideration of $2,500.00 paid to and received by the respondent in cash at such time.

The Bar Association alleged that if the matters stated by respondent in the statement of September 19, 1964, were in truth and in fact an accurate account of the events which happened, the respondent was guilty of bribery of public officials and of conspiracy to cause members of the legislature to cast their votes for a consideration; that if the matters therein stated (September 19, 1964 statement) were not true, but were in fact false, the same were libelous per se against the parties mentioned in the statements, were accusations that such parties violated the bribery statutes of Oklahoma, both in accepting bribes and in conspiring to cause others to accept bribes to influence their votes; that if the statement

were not true the act of respondent in uttering the statement was a violation of the penal code of Oklahoma relating to criminal libel and was given under oath to be used as evidence in an anticipated libel action which might be filed against the newspaper, in violation of the penal code of Oklahoma relating to perjury, and if untrue, was given as a promise of respondent to commit perjury if called upon to testify in a libel action which might be filed against the newspaper.

It was further alleged that respondent, having given the first statement contrary to the second statement, and having caused or contributed to the publication of such contrary facts, uttered the second statement with knowledge that the same would likewise be used in an anticipated libel action; that if the last statement were true, then respondent accepted a bribe to influence his testimony in violation of the penal code of Oklahoma relating to bribery of witnesses; that if the last statement was in fact a false statement, then respondent by giving such statement under oath engaged in conduct contrary to honesty, justice and good morals and the giving of such statement for a consideration, and that if it was untrue, was a promise to violate the penal code of Oklahoma relating to perjury, contrary to honesty, justice and good morals and tended to impede the administration of justice and to bring the legal profession into disrepute in violation of Canons 15, 22, 29 and 32, of the Canons of Professional Ethics and his oath as an attorney.

The findings and report of the trial examiner, which were approved by the Board of Governors, followed the general tenor of the allegations contained in the complaint.

Respondent argues that the sole and only issue before this Court is: "May an attorney be disbarred for the execution of purportedly conflicting statements subscribed to before a Notary, made and executed under circumstances not amounting to perjury?"

Complainant argues that the only issue is: "Does the complaint and record herein

warrant this Court adopting and approving the findings and recommendations of the Board of Governors?"

Respondent concedes that the evidence reasonably tends to support the finding that the statement of September 19, 1964, was signed by him and admits that he executed the statement of November 24, 1964. Respondent argues that "he did not initiate, nor was he the moving force in bringing either statement into existence. As to the first statement, the newspaper reporter called upon respondent three times before being able to obtain the statement. As to the second, the record indicates the statement was presented to respondent by a friend and fellow lawyer for signature without prior discussion or negotiations, and the $2,500.00 in cash that was also delivered in conjunction with the execution of the statement was, if connected with the statement at all, purely gratuitous".

Respondent proposes that neither of the so-called affidavits were affidavits under the plain language of the Oklahoma Statutes; that they could not be made a basis for a charge of perjury; and that complainant's case for disbarment is bottomed solely on the fact that respondent gave two conflicting written statements concerning a set of facts. Respondent argues that "the Bar Association and the trial examiner convicted and recommended discipline of the respondent on the flat proposition that he had given two conflicting statements, and that the contents of those statements and the circumstances under which they were given were of absolutely no consequence to the decision". Respondent then poses this question, "Would anyone suggest that respondent should be disbarred for giving a written statement to a newspaper reporter that respondent always wore a white hat in the winter time, and two months later giving another written statement to a fellow lawyer to the effect that he had never worn a white hat in his life? Is there any legal distinction, on the basis of logic and reason, between the white hat

proposition and the statement which respondent's disbarment is sought, * * * ?"

In our opinion it is unnecessary for this Court to determine whether the "statements" or "affidavits" executed by respondent fall within the purview of an "affidavit" as that term is defined by statute or by case law or whether the "statements" or "affidavits" could be made the basis for a perjury charge against respondent. We are not here concerned with a criminal proceeding but only with a disbarment proceeding and the only issue presented is whether respondent should be disbarred or otherwise disciplined. In State ex rel. Oklahoma Bar Ass'n v. Hatcher, 201 Okl. 683, 209 P.2d 873, we quoted with approval In re Doss, 367 Ill. 570, 12 N.E.2d 659, and said:

"'A "disbarment proceeding" is an investigation of the conduct of a member of the bar to determine whether he shall be disbarred or disciplined, and is not a lawsuit with the formalities of common-law pleading and judgment, so that technical legal defenses cannot be called upon to aid in response to the charge.'"

The record does not sustain respondent's argument that he was disciplined on the "flat proposition that he had given two conflicting statements, and that the contents of those statements and the circumstances under which they were given were of absolutely no consequence to the decision" and we are of the opinion there is a material legal distinction between respondent's "white hat" proposition and the conflicting statements executed by respondent.

■ The complaint and the evidence adduced to support it are based upon the facts that claimant issued inconsistent statements and that one of the statements is false. The gravity of the statements and the purpose and circumstances under which the same were executed form a material part of the complaint. If the facts set forth in the statement of September 19, 1964, are true, the acts of respondent and others could constitute grounds for criminal liability. If

such facts are untrue, the statement was libelous and in violation of the criminal code relating to criminal libel. And the record supports the finding of the trial examiner that both statements were executed with the knowledge that the same would be used in an anticipated libel action.

Membership in the Bar Association is a privilege burdened with conditions and one of these condition is a fair, private and professional character and a lawyer may forfeit his right to respect and confidence as a member of the bar by his conduct. If the facts set forth in either statement are untrue, the making of the untrue statement goes far afield of the honesty, justice and good morals required of a member of the bar. Since the statements are inconsistent and both can not be true, it necessarily follows that one of the statements must be untrue.

Although the conduct of respondent complained of did not occur in a judicial proceeding and it might be said that the conduct complained of is not premised upon the existence of an attorney-client relationship, such facts are immaterial. In State of Oklahoma, ex rel. Oklahoma Bar Association v. Ablah, Okl., 348 P.2d 172, we said that it is well settled that an attorney may so conduct himself outside the relationship of attorney and client as to warrant disciplinary action and disbarment, and that dishonesty in dealing with his fellow man, unjustified slander and unworthy annoyance are often sufficient to justify disciplinary action. In that case we held:

> "Under Canon 29 of the Canons of Professional Ethics, a lawyer is required to strive at all times to uphold the honor and maintain the dignity of the legal profession and when he so forgets himself and does acts that will bring the legal profession into disrepute he may be reprimanded, suspended or disbarred from the practice of law depending upon the seriousness of the offense."

In our opinion the record supports the finding of the trial examiner, which were approved by the Board of Governors, that respondent had violated the Canons of Professional Ethics and his oath of an attorney.

Respondent argues that it is a fundamental concept of substantive due process of law that the means used in seeking a legitimate end must be reasonable and that his disbarment under the circumstances is a completely and wholly unreasonable means to be used to obtain what is admittedly a legitimate end, i. e., an acceptable standard of conduct for all lawyers. Respondent proposes that his right to practice law is a substantial property right and he is entitled to every protection arising under the Constitution of the United States.

In considering this argument and proposition, we find that the trial examiner found no justifiable reason for the conduct of the respondent and no satisfactory explanation or extenuating circumstances. In our opinion, the record justifies this finding.

In State of Oklahoma v. Hefley, Okl., 429 P.2d 997, we held that in a disciplinary proceeding involving professional misconduct this Court will review the entire record and approve the recommendations presented where warranted. In our opinion, the recommendations of the Board of Governors should be approved.

It is hereby decreed that the respondent, Whit Pate, be disbarred from the practice of law in the State of Oklahoma and his name be stricken from the roll of attorneys. It is further ordered that the cost of the transcript and of the proceedings, borne by the Oklahoma Bar Association in the amount of $213.00, be assessed against respondent, Whit Pate.

JACKSON, C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY, LAVENDER and McINERNEY, JJ., concur.