STATE of Oklahoma ex rel. OKLAHOMA
BAR ASSOCIATION, Complainant,

v.

Granville SCANLAND, Respondent.

S.C.B.D. No. 2236.

Supreme Court of Oklahoma.

May 12, 1970.

Jeff R. Laird, Oklahoma City, for complainant.

V. P. Crowe, James H. Harrod, Oklahoma City, for respondent; Jack Ewing Wilson, Oklahoma City, of counsel.

BLACKBIRD, Justice.

After the trial prescribed by Article X of the Rules Creating and Controlling the Oklahoma Bar Association, for proceedings initiated on formal complaint of the Board of Governors of said Association (5 O.S.1969 Supp., Ch. 1, App. 1) charging respondent with professional misconduct by requesting a certain Oklahoma City Police Department Detective to remove from said Department's records, and deliver to him for the purpose of destruction, the record of a Mr. B's arrest, and his offering to pay said Detective the sum of $200.00 for so doing, the evidence was found, by the Trial Authority, to establish the charges; and said Trial Authority recommended that, by reason thereof, respondent be disbarred from the practice of law in this State.

The conduct, thus complained of, occurred in the office of the respondent, as an Assistant District Attorney for Oklahoma County; and, according to his brief, was the cause of his "forced resignation" from that position.

In the brief he filed with this Court, after the filing of the Trial Authority's report, respondent makes no effort to challenge the finding of the Trial Authority.

In fact, he tacitly admits he is guilty of doing what he is charged with, but attacks the recommendation for his disbarment as being too harsh a penalty for such conduct in view of his altruistic motive for it, the penalty he has already paid for it, and his past record of public service and exemplary conduct during many years as a member of the Bar.

As respondent has filed nothing which constitutes any real exception to the Trial Authority's findings of fact or conclusions of law, and we are not of the opinion that those findings are unsupported by a preponderance of the evidence, we adopt the Trial Authority's findings of fact as is prescribed by Section 17(d) of the Rules cited supra.

The only question then remaining is whether, on the basis of the facts referred to in respondent's brief (which amounts to no more than a plea for leniency), we should reject the Trial Authority's recommendation of disbarment, or should "enter" the order "giving effect" to such recommendation contemplated in subparagraph (c) of the cited section, as the Bar Association's general counsel, who acted as a trial attorney, urges us to do in complainant's brief.

Reference to the facts contained in the record concerning respondent's present status, and past record, reveals that he was 73 years of age at the time of his trial; that he was admitted to the practice of law in this State during 1924, and thereafter was engaged in private practice in Oklahoma City until April, 1937, except for one period of not more than a year, during which he practiced in Kay County. From April, 1937, to October, 1939, respondent was Oklahoma City's Chief of Police; and, during an eight-year period following that, he was an Assistant Municipal Counselor for said city. In 1948, respondent was elected County Attorney of Oklahoma County and served as such for a continuous period of eight years beginning in January, 1949. In 1958, he became an Assistant County Attorney and has served continu-

ously in that capacity, and as Assistant District Attorney, since, until his above mentioned resignation in March, 1968.

During eight or nine of the years that respondent has been a Bar member in Oklahoma City, he has served as a part time professor at a local school of law, and, while he was the Oklahoma City Police Department's Chief Executive Officer, he established said Department's first police academy. For approximately twenty years, he has lectured on various phases of criminal law and police work at said academy.

■ Respondent testified as to his membership and work in various war veterans, and civic, organizations, and further testified that it was through his membership in one of the latter that he became acquainted with Mr. B. He further testified that, in March, 1968, B told him he was being sued as a defendant in a district court case arising out of a fire that occurred "in the backend of a beer place that he had"; that B further told him his lawyer had advised him to get that (Police Department) record so that he would be able to speak the truth "if he was questioned (as) to whether or not he had ever been arrested" or had any police record. Despite this, and other testimony by respondent contemplated to make it appear that the only reason he attempted to have B's police record removed from the Oklahoma City Police Department's files, and brought to him at his office in the County Court House, was for the purpose of letting B see it to refresh his memory so that he could be accurate in answering questions about it, other evidence, including tape recordings of respondent's conversations, in his office, with the Police Detective—whose substantial accuracy respondent admitted—indicated that the real purpose of paying the Detective the $200.00, for removal and delivery of said record, was to destroy it, and thus effect a lasting concealment of it; and it is evident, from the Trial Authority's unchallenged findings, that the latter is what he found to be the fact of the matter. In this connection, it is to be remembered that

attorneys of this State have been disbarred for making false sworn statements, as well as for accepting bribes (see State ex rel. Oklahoma Bar Ass'n v. Pate, Okl., 441 P.2d 393, and In re Simpson, 79 Okl. 305, 192 P. 1097), and no suggestion is herein made that giving a bribe to a public, or police, officer, for violating his duty constitutes professional misconduct on the part of a County Attorney, or his assistant, any less than accepting one.

Respondent's brief refers to portions of the testimony elicited at his trial, indicating the paternalistic attitude toward, and relationship with, young police officers (like the Detective to whom he offered the $200.00) the respondent has had, since the time he served as Police Chief. Respondent also refers to evidence indicating that, since he first became well acquainted with the Detective by working with him in the prosecution of a man charged with murdering a policeman, he had learned, through conversations with him, of the difficulties this police officer was having in discharging his financial obligations from his modest earnings. Respondent also cites the lack of any evidence that he was to obtain any remuneration, or personal benefit, from the project he undertook for B, and strongly infers that his only motive, for doing this, was the unselfish one of doing B a favor, and, at the same time, helping the Detective obtain badly needed money. While respondent's motives in the attempted transaction may have been entirely humanitarian, and, as respondent suggests, the motives of an attorney, in his situation, may appropriately be taken into consideration in determining the disciplinary action to be taken against him, we do not think it would be seriously contended that offering a bribe is any less serious a breach of good conduct on the part of the bribe offeror, because he knows the offeree needs the money, than if he has no such knowledge; and we doubt that anyone with respondent's educational background, and long experience in law enforcement, would suggest that it is.

Respondent's brief says he "has too much on the credit side of the ledger after some thirty years of public service * * * to be disbarred for a single indiscretion born of an inordinate and unwise concern for the problems of a troubled cop"; and he points to the testimony of eighteen character witnesses, some of whom have been prominent in Bar, and governmental, affairs, as confirming "his spotless reputation in this community." He contends that there is nothing in the record that remotely indicates his disbarment is needed for, or may be justified in "protection of the courts and public", which he argues is the primary purpose of disabarring an attorney, citing In re Green, 173 Okl. 460, 49 P.2d 197. He further argues that, since his conduct did not involve the professional relationship between an attorney and his client, was not of a character to strike at, or undermine, the confidence and trust sought by the legal profession from the laity, and that, because so much of his career has consisted of being "a public lawyer", his forced resignation, as Assistant District Attorney, has, in effect, suspended him from practice and given him a public reprimand, to add disbarment to the penalties he has already suffered would constitute excessive, unwarranted and unconscionable punishment.

We do not agree with the General Counsel for the complainant that the testimony of respondent's eighteen character witnesses is irrelevant. This Court, and other courts, have considered such evidence in determining the disciplinary action to be taken against attorneys in such matters. See In re Green, supra; In re Canzoneri (Mo.), 334 S.W.2d 30, and In re Stolen, 193 Wis. 602, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355. However, we agree with the rule followed in Nebraska that: "Whether or not the reputation of an attorney is of material importance in any disciplinary case must necessarily depend largely upon the facts and circumstances thereof." State ex rel. Nebraska State Bar Ass'n v. Butterfield, 169 Neb. 119, 98 N.W.2d 714, 719,

quoting State ex rel. Nebraska State Bar Ass'n v. Richards, 165 Neb. 80, 84 N.W.2d 136.

We do agree with the General Counsel to the extent that he implies there are fewer things more damaging to public respect for law enforcement and the administration of justice than a corrupt public prosecutor, or his assistant, (see In re Wilson, 76 Ariz. 49, 258 P.2d 433, 437) and we can think of few offenses more serious in the eyes of the public than for one who speaks, and acts, with the authority and prestige of such a prosecutor's office, to attempt to corrupt a police officer. Such men should maintain the most scrupulous care in discharging the duties of their offices and be outstanding examples of integrity in public office. To paraphrase what was said in In re Abbamonto, 19 Ill.2d 93, 166 N.E.2d 62, 64: The public and the courts have an interest in such an officer's integrity and "are entitled to require that he shun even the appearance" of corruption. As said of the respondent in Re Stolen, supra, this respondent knew, or should have known, that his position carried with it a limitation on his freedom of action.

■ Nor do we think that, in this case, a major consideration is whether or not the respondent has been punished enough. As said in In re Santosuosso, 318 Mass. 489, 62 N.E.2d 105, 107, 161 A.L.R. 892, 895, quoted in In re Wilson, supra: "To make that the test would be to give undue weight to his private interests, whereas the true test must always be the public welfare. Where any clash of interest occurs, whatever is good for the individual must give way to whatever tends to the security and advancement of public justice."

Although as said in In re Green, supra, the primary purpose of disbarment is not punishment, but the protection of the courts and public, this cannot be the only purpose of Bar disciplinary proceedings, for, as so logically reasoned by the Court in Re Stolen, supra :

"  *    *    *

If the only purpose of exercising the disbarment power be to protect the public and the court from dishonest lawyers, then in all cases the judgment should be permanent disbarment or for such a length of time to give some reasonable hope for moral regeneration. This cannot take place in six months, a year or two years, and yet suspensions for such periods of time are common. We consider that suspensions of this character can only be justified on the ground that they are for disciplinary purposes and to act as a restraining influence upon others. This is a legitimate purpose to be accomplished by the exercise of all disciplinary power  *    *    *."

It is our opinion that a District Attorney, or his assistant, is a minister of justice to a degree second only to judges. Accordingly, our views in this case are similar to those expressed by the Court in Re Stolen, supra, and, in which, it was said:

"We consider that upon two grounds the judgment of this court must be as hereinafter pronounced: First, the offense of respondent betrays a lack of moral stamina, and therefore a lack of moral character, which renders the respondent an unfit person to hold the office of attorney at law; and, second, the offense is of so grave a character as to call for serious treatment, not only as a matter of discipline to the respondent, but for its restraining influence upon others."

In accord with the foregoing, the recommendation of the Trial Authority is hereby given effect, and the license of the respondent to practice law as a member of the Oklahoma Bar Association is hereby revoked.

IRWIN, C. J., and WILLIAMS, JACKSON, HODGES, LAVENDER and McINERNEY, JJ., concur.