STATE of Oklahoma, ex rel. OKLAHO-
MA BAR ASSOCIATION,
Complainant,

v.

David HALL, Respondent.

SCBD No. 2436.

Supreme Court of Oklahoma.

June 9, 1977.

John Amick, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Berry & Berry, James W. Bill Berry, John W. Coyle III, Charles J. Watts, Oklahoma City, for respondent.

WILLIAMS, Justice.

This action is a bar disciplinary proceeding instituted by State of Oklahoma, ex rel. Oklahoma Bar Association, against David Hall, formerly the governor of this state, pursuant to Article X, Sections 4(b), 4(c) and 4(d) of the Rules Creating and Controlling the Oklahoma Bar Association, 5 O.S. 1971, Ch. 1, App. 1, as they read prior to February 17, 1977, amendment not applicable here.

Respondent was charged in Federal District Court, Western District of Oklahoma, with violating the Hobbs Act, 18 U.S.C. § 1951, and the Travel Act, 18 U.S.C. § 1952, by committing the crimes of extortion, conspiracy and bribery. Respondent pleaded not guilty to those charges and was thereafter tried and found guilty.

The present proceeding was instituted pursuant to Art. X §§ 4(b), 4(c) and 4(d) of the Rules which in pertinent part (prior to above-described amendment) provided as follows:

"(b) A member . . . shall not practice law following conviction of a crime involving moral turpitude . . . regardless of the pendency of an appeal.

"(c) Upon receipt of (1) duly certified copies of the indictment or information and of the judgment of conviction of a member of the Association of a crime involving moral turpitude, in any jurisdiction . . . the General Counsel shall direct the member to appear before the Supreme Court . . . and show cause, if any he has, why the member should not be disciplined. The documents will constitute the charge.

"(d) The documents described in Subsection (c), supra, shall constitute evidence that the member committed the acts as found by the court or foreign trial tribu-

nal, and shall suffice as the basis for discipline in accordance with these rules. The member may, however, submit a certified copy of the transcript of the evidence taken in the trial tribunal as evidence that the finding was not supported by the evidence. Technical and other errors not impeaching the finding of guilt will be disregarded."

General Counsel, pursuant to Art. X, § 4(c), supra, directed respondent to appear before this Court and show cause why he should not be disciplined.

Respondent suspended himself from the practice of law and filed a response in which he denied commission of any crime or other conduct justifying disciplinary action.

The federal charges against respondent came about as follows. Early in 1975, a grand jury of the United States District Court for the Western District of Oklahoma returned indictments against respondent Hall and two codefendants, W. W. Taylor and R. Kevin Mooney. The indictment against respondent Hall, in four counts, as later reduced by the trial court, charged him with extortion, conspiracy and bribery during the course of which the facilities of interstate commerce were used, in violation of 18 U.S.C., Sections 1951 and 1952. The crimes were allegedly committed in the course of a scheme to persuade the Board of Trustees of the Oklahoma Public Employees Retirement System to invest ten million dollars in Guaranteed Investors Corporation, for which respondent was to receive a "finders fee" of $50,000.

A trial based upon that indictment started on February 24, 1975, and Mooney, who had pleaded guilty to one of the charges against him, testified as a witness for the prosecution. On March 14, 1975, the jury returned verdicts of guilty on all four counts against respondent Hall. On April 25, 1975, he was sentenced to three years in prison on each count, with the sentences to run concurrently. Shortly thereafter, this proceeding was instituted by the Oklahoma Bar Association, and respondent Hall appealed his conviction to the United States Court of Appeals for the Tenth Circuit. On

May 12, 1976, that court affirmed the conviction in a lengthy opinion appearing at 536 F.2d 313. Respondent Hall then sought certiorari in the United States Supreme Court. Certiorari has recently been denied.

No useful purpose would be served by attempting to summarize all of the evidence before us, including the 2400 page transcript of the federal trial which respondent filed in this proceeding. The following paragraphs from the opinion of the Tenth Circuit Court of Appeals, *United States v. Hall*, 536 F.2d 313, are sufficient to set out the basis of the verdict:

"Hall was at the time in question Governor of Oklahoma. W. W. Taylor was president, treasurer and secretary of a corporation called Guaranteed Investors Corporation. Taylor developed a plan to sell ten million dollars in promissory notes of Guaranteed Investors, a newly formed corporation, which notes were to be secured by government guaranteed collateral. Taylor sought to sell these notes to the Oklahoma Employees Retirement System (System). Hall, Taylor and Mooney, the latter being a lawyer for Guaranteed Investors, made an agreement for the plan to be presented to the Chairman of the System's Board of Trustees. Hall did not control the board of the employees retirement system, but he had numerous contacts on the board because he had made appointments of several members of the board. Mooney had brought Hall and Taylor together. Hall agreed to use his influence to sell the plan to the board. He demanded, however, $100,000 to be divided between him and Mooney. Hall contacted John Rogers, Oklahoma Secretary of State and Chairman of the Board of Trustees of the System, and told him that $50,000 would be paid to them, meaning Hall and Rogers, if the Taylor plan was accepted by the board of the employees retirement system. The $50,000 was to be divided equally between Rogers and Hall. Hall then advised Mooney that he (Mooney) was going to pay one-half of the $25,000 which was to be paid to Rogers. True to

his word, Hall persuaded the members of the board to approve the Taylor plan and it did so on December 23, 1974, subject only to a letter of legality from the Attorney General plus a letter of approval from the investment counselor of the board. * * *

"Previously Taylor had sought to sell his plan through Mooney to the Board of Trustees of the Retirement System, but to no avail. Only after a meeting with Hall in Fort Worth, Texas, at which time Hall told Mooney that he thought his effort should be worth $100,000 which he characterized as a finders fee and which he offered to share equally with Mooney, did things begin to happen. (footnote omitted) This took place on December 2, 1974, and the next day Mooney told Hall that Taylor approved the payment. The very same day Hall had his talk with Rogers, at which time he offered to split the $50,000 with him in exchange for his help in getting the Taylor plan accepted. It was some days later that Hall told Mooney that he expected him to contribute a part of his $25,000 to Rogers.

"However, Rogers proceeded to the office of the Oklahoma Attorney General and reported the $25,000 offer. He did so on the same day that the offer was made to him. The Attorney General was out and so Rogers related the offer to an assistant Attorney General. On December 4, Rogers met with Mr. Derryberry, the Attorney General, and a few days later the two of them met with the FBI. At that time Rogers agreed to monitor conversations by means of a microphone attached to his person and to his telephone. There is evidence that in the days following the described conversations, Hall contacted Rogers and other members of the board of trustees trying to persuade them to approve the plan. Furthermore, in December, Taylor and Mooney met with Rogers, Hall and members of the board on several occasions. At a number of the meetings with Hall and Rogers, the subject of the payment came up. Finally, on December 23, the board approved the plan subject to the obtaining of a letter of legality from the Attorney General and a letter of commitment from the board.

"On December 31, Hall told Mooney that any payment to Rogers was illegal under Oklahoma law and that Mooney should caution Taylor against making any such payments to Rogers. Nevertheless, Taylor and Mooney talked about paying Rogers in the form of a consulting fee and in subsequent conversations they talked to him (Rogers) generally about payments in an effort to gain the release of a commitment letter. Subsequently, Taylor showed a check for at least $25,000 to Mooney, which was payable to him (Mooney) but which was destined for Rogers (footnote omitted). He did not turn it over to him. But, finally, on January 13, Taylor advised Mooney that Rogers had agreed to the release without any payment being made. The next day Mooney went to Oklahoma City from Texas. When Rogers handed over the letter, Mooney was arrested. Hall and Taylor were subsequently arrested."

It appears that the allegations of error made by respondent Hall in his appeal to the Circuit Court of Appeals were (1) that the indictment was insufficient; (2) that the court erred in dealing with a juror who became ill after the cause was submitted; (3) that prejudice requiring reversal resulted from pretrial publicity; (4) that the court erred in refusing to give an instruction requested by defendants; (5) that the *voir dire* of prospective jurors was insufficient; (6) that certain tape recordings should not have been received in evidence; and (7) misconduct of the district attorney. It may be noted that in the federal appeal there was no direct allegation that the evidence was insufficient to support the verdict. Yet here we are asked to review that evidence and hold it insufficient.

In his brief in this court, respondent Hall argues generally under several propositions that this court should review the evidence and determine for itself whether it was sufficient to support the verdict; that conviction of a felony does not necessarily

make disbarment mandatory; that this court should consider the "strength and quality" of the evidence, and the "political atmosphere" surrounding the trial; that it should consider the background and good character of the respondent and that any weaknesses in the evidence should be interpreted in the light most favorable to respondent.

After a careful consideration of the entire record before us, we hold that the transcript of the evidence in the criminal case in the federal court shows that the jury verdict was supported by the evidence. The crimes of which respondent Hall was convicted involve moral turpitude.

■ Art. IX § 10 of the described Rules provides that discipline by this Court shall be disbarment, suspension from practice, reprimand, etc. The primary purpose of discipline is not punishment but purification of the Bar and protection of the courts and the public generally. *In re: Green*, 173 Okl. 460, 49 P.2d 197; *State ex rel. Oklahoma Bar Association v. Booth*, Okl., 441 P.2d 405. However, this is not the sole purpose. Discipline also serves to deter a respondent from committing similar acts in the future and acts as a restraining influence upon others. *State ex rel. Okl. Bar Association v. Scanland*, Okl., 475 P.2d 373.

■ Respondent has filed with us an exhibit containing the affidavits of some four dozen persons, some of whom say they have known him long and favorably, in effect urging consideration of respondent's previous good reputation and his ability and standing in determining the character of discipline properly to be assessed. *State ex rel. Okl. Bar Ass'n v. Gresham*, 556 P.2d 264 (Okl.1976). Consideration has been given this evidence. Nevertheless, in view of the gravity of the acts of which the respondent was convicted, we decline to assess a sanction of suspension only.

Respondent is determined to have exercised the authority of his then-held high office to extort a bribe from a "victim" with the inducement of securing through his influence "under color of official right"

the investment by the Oklahoma Employees Retirement System of $10,000,000 in the victim's corporation's obligations. *United States v. Hall*, 536 F.2d 313.

In *State ex rel. Okl. Bar Ass'n v. Scanland*, Okl., 475 P.2d 373, we characterized a District Attorney, or assistant, as a minister of justice second only to judges. The constitutional office of Chief Executive is no less an important part of our Executive Branch. As was said in *Scanland*, quoting from *In re: Stolen*, 193 Wis. 602, 214 N.W. 379, 216 N.W. 127, 55 A.L.R. 1355,

"First, the offense of respondent betrays a lack of moral stamina, and therefore a lack of moral character, which renders the respondent an unfit person to hold the office of attorney at law; and, second, the offense is of so grave a character as to call for serious treatment, no only as a matter of discipline to the respondent, but for its restraining influence upon others."

It is therefore ordered, adjudged and decreed that the respondent be, and he is hereby disbarred from the practice of law in this state, and his name is ordered stricken from the roll of attorneys.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN and BERRY, JJ., concur.

MALEY, ROMANG and BROCK, Special Justices, concur.

Justices BARNES, SIMMS, and DOOLIN, having certified their disqualification in this case, the Honorable JOHN D. MALEY, the Honorable RICHARD E. ROMANG, and the Honorable JACK L. BROCK were appointed Special Justices in their stead, respectively.