2000 OK 37

**STATE OF OKLAHOMA ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant**

v.

**Craig R. TWEEDY, Respondent**

**SCBD Nos. 3878, 4243.**

Supreme Court of Oklahoma.

May 9, 2000.

As Corrected May 18, 2000.

Rehearing Denied June 19, 2000.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for complainant.

Craig R. Tweedy, Sapulpa, Oklahoma, respondent, pro se.

BOUDREAU, Justice:

### I. Procedural History

¶1 The Complainant Oklahoma Bar Association (OBA) brought disciplinary proceedings against Respondent Attorney, Craig R. Tweedy (Respondent), in two separate complaints alleging a collective total of seven counts of professional misconduct. The OBA moved to consolidate the two complaints, OBAD 1085, SCBD 3878 (Complaint I) and OBAD 1292, SCBD 4243 (Complaint II). The Professional Responsibility Tribunal (PRT) granted the Motion to Consolidate. The PRT conducted a hearing on the issues raised in the Complaints on March 2 & 3, 1999.

¶2 Respondent was admitted to practice law in 1964 and has been a member of the Oklahoma Bar Association at all times relevant to the events addressed herein. Respondent's official roster address is 202 Wells Building, 208 E. Dewey Street, Sapulpa, Oklahoma 74066.

¶3 The allegations against Respondent in Complaint I had their genesis in his handling of three separate matters in the United States District Court for the Northern District of Oklahoma (Northern District) and the United States Court of Appeals for the Tenth Circuit (Tenth Circuit), between 1986 and 1993. Both courts sanctioned Respondent for pursuing baseless legal claims and remedies in the three cases. The Tenth Circuit eventually disbarred Respondent and the Northern District suspended him from practice for three years. The Northern District refused to subsequently reinstate Respon-dent upon the expiration of his three-year suspension. Although filed as a separate complaint, Complaint II alleged that Respondent had been disciplined in other jurisdictions as a result of the conduct that formed the basis of Complaint I.

¶4 Complaint I alleged three violations of Rule 3.1 (frivolous claims and contentions), Oklahoma Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–4 (ORPC). The amendment to Complaint I alleged violation of Rule 4.2 (communication with a person who is represented by counsel), ORPC. Complaint II alleged the same conduct violated Rules 1.1 (incompetent representation), 3.1(frivolous claims and contentions), 8.2 (false and reckless statements about a judge), and 8.4(d) (conduct prejudicial to the administration of justice), ORPC, and Rule 1.3 (acts contrary to prescribed standards of conduct), Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A (RGDP).

¶5 After a hearing, the PRT found there was clear and convincing evidence that Respondent violated the ORPC, Rule 3.2 by making frivolous claims and contentions, Rule 8.2 by making false or reckless statements concerning the qualifications or integrity of a judge, Rule 8.4(d) by conduct prejudicial to the administration of justice, and Rule 1.1 by incompetent representation of clients. The PRT also found that Respondent violated the RGDP, Rule 1.3 by conduct that discredits the legal profession. The PRT further found there was not clear and convincing evidence that Respondent violated ORPC, Rule 4.2. In addition, the PRT found that Respondent's prior discipline should be considered in its recommendation of discipline.

¶6 Upon these findings, the PRT recommended Respondent be disbarred for "his continued filing of frivolous and vexatious motions and pleadings after being directed by two levels of federal courts not to do so", for his refusal to acknowledge the unprofessional nature of his conduct, and for being suspended and denied reinstatement by the Northern District and disbarred by the Tenth Circuit. The PRT also recommended

a private reprimand for violation of ORPC, Rule 4.2, even though it found no clear evidence of violation of Rule 4.2.

## II.  Standard of Review

█ ¶ 7 In considering the PRT's recommendations, we review the entire record de novo, *State ex rel. Oklahoma Bar Association v. Todd,* 1992 OK 81, 833 P.2d 260. A violation of the ORPC must be established by clear and convincing evidence. Rule 6.12(c), RGDP; *State ex rel. Oklahoma Bar Association v. Miskovsky,* 1991 OK 88, 824 P.2d 1090.

## III.  Complaint I, Count I, Graham Litigation

¶ 8 In 1987, Respondent entered his appearance for the plaintiff, Graham, in her suit alleging wrongful termination, discrimination and harassment against American Airlines (Graham 1). The case was tried in the Northern District over a period of days. After the trial, in August of 1989, the court entered judgment for the defendant, American Airlines. After judgment in Graham 1, Respondent filed two cases in the state district court in Tulsa County regarding the same claim (Graham 2 and Graham 3). Respondent filed Graham 2 in September, 1989, only about a month after judgment in Graham 1; he filed Graham 3 in September, 1991. American Airlines removed both cases to the Northern District.

¶ 9 In the Northern District, Respondent asserted that Graham 2 was a new and distinct cause of action for fraud upon the court based upon newly discovered evidence relating to the timing and occurrence of an aircraft inspection. The Northern District rejected the assertion and granted summary judgment to American Airlines. The court determined that the Graham 2 claim represented an impermissible collateral attack on the Graham 1 judgment, because the claim either was raised or could have been raised in Graham 1 and was therefore barred by the doctrines of res judicata and collateral estoppel.

¶ 10 In Graham 3, Respondent continued his pursuit of the claim asserted in Graham 2, i.e., that fraud had been perpetrated on the court. In response, American Airlines filed a separate action in the Northern District seeking to prevent Respondent and his client from filing further actions in state district court (Graham 4). In Graham 4, the Northern District enjoined Respondent from relitigating issues previously decided in Graham 1. The Northern District sanctioned Respondent as well.

¶ 11 During the course of the Graham litigation, Respondent filed a myriad of post-trial motions in the Northern District in the form of motions to vacate, motions to reconsider and motions to clarify. In addition, he commenced two appeals to the Tenth Circuit both of which he later sought to dismiss. He also sought two writs of mandamus in the Tenth Circuit. Ultimately the Tenth Circuit sanctioned Respondent indicating that "[t]he record in this case is replete with multiple and vexatious filings by Plaintiff ... so numerous and multiplicative we ... have determined that sanctions are appropriate in this case."[1]

¶ 12 Before the PRT, Respondent repeatedly defended his conduct as necessary to prevent fraud from being perpetrated upon the court "by the planned insider means of criminal concert enabled by Rule 34(a), F.R.App.P." Respondent complained the judges of the Northern District did not read his briefs relating to the newly asserted claim brought in the state district court action and that the Northern District's "injunctive fiats had protected American Airlines by evaporating the [new claim] without mentioning it." Respondent believed both the Northern District and Tenth Circuit had been defrauded and this justified his repeated and zealous efforts to bring the fraud to the attention of the courts.

¶ 13 At the PRT hearing, Respondent was either unwilling or unable to acknowledge

---

1. *Graham v. American Airlines, Inc.,* No. 91–5060 (10th Cir. Apr. 7, 1992) (Order granting sanctions) quoted in *IN RE: Grievance Against Craig Tweedy,* No. M–267–A, (N.D.Okla. Jan. 15, 1993) (unpublished order directing entry of order and judgment suspending Tweedy from practice before the court for a period of three years).

that his conduct with respect to the Graham litigation violated any rules of professional conduct or was prejudicial to the administration of justice in any fashion. He repeatedly excused his own behavior and blamed his difficulties on either the federal judicial system, his opposing parties, or a favored relationship between the two.

¶ 14 Rule 3.1, ORPC, demands that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous[.]" The comment accompanying the Rule further provides that attorneys have a "duty not to abuse legal procedure." Rule 8.4(d), ORPC, states that an attorney may not engage in conduct that is prejudicial to the administration of justice. Rule 1.3, RGDP, requires all attorneys to act within the prescribed standards of conduct and to refrain from acts which would "reasonably be found to bring discredit upon the legal profession."

■ ¶ 15 At his March, 1999, hearing before the PRT, Respondent admitted the underlying conduct set out in Count I of Complaint I, but denied that his actions violated any of the Oklahoma Rules of Professional Conduct or the Rules Governing Disciplinary Proceedings. We disagree. Although Respondent may have genuinely believed that his client was the victim of fraud and that he was asserting a meritorious claim when he filed Graham 2, the overall manner in which he conducted the Graham litigation clearly abused the resources of the courts. After having two appeals dismissed in the Tenth Circuit, Respondent attempted to avoid the force of the Graham 1 judgment by filing two subsequent proceedings in state court. Both state court filings were impermissible collateral attacks on the judgment in Graham 1.*Dryden v. Burkhart,* 1946 OK 343, 198 Okla. 239, 177 P.2d 121 (1947).

¶ 16 We agree with the comments of the Northern District when it stated that it "views the pending state court proceeding as essentially vexatious and baseless ... One lawsuit to pursue her alleged rights was ap-

propriate. Two lawsuits are inappropriate. Three lawsuits are clearly vexatious."[2] Regardless of his convictions to Graham's cause, Respondent was required to heed the law regarding the method of attacking judgments and the mandates of the Oklahoma Rules of Professional Conduct. Respondent failed in this regard. We find that the evidence establishes, by a clear and convincing standard, that Respondent's actions, as alleged in Count I, Complaint I, were prejudicial to the administration of justice and violated Rules 3.1 and 8.4(d), ORPC, and such actions by Respondent were contrary to prescribed standards of conduct and grounds for discipline under Rule 1.3, RGDP.

## IV. Complaint I, Count II, the Mullen Cases

¶ 17 In 1989, Respondent represented Mullen, the owner of a transfer and storage company who filed a claim in the Northern District alleging his business was adversely affected by the actions of the railroad company which removed a railroad crossing and limited access to his property (Mullen 1). After a trial, the court entered judgment against Mullen. Respondent subsequently filed a Motion to Vacate the Judgment, alleging the judgment had been obtained through fraud upon the court, which was substantially the same argument made by Respondent throughout the Graham litigation. After the trial court denied Respondent's Motion to Vacate, Respondent filed subsequent motions for reconsideration and mandamus relief which were also denied.

¶ 18 When Respondent's efforts to seek post-judgment relief failed in Mr. Mullen's case, Respondent filed a case in state district court in Tulsa County on Mrs. Mullen's behalf, again alleging the Northern District judgment against Mr. Mullen was obtained through fraud upon the court (Mullen 2). In late 1990, one of the defendants in Mullen 2 filed an action in the Northern District seeking to enjoin Respondent from asserting any allegation contrary to the court's specific findings of fact in the first Mullen case (Mul-

---

**2.** *American Airlines, Inc. v. Tweedy,* No. 91–C–762–B, (N.D.Okla. Mar. 31, 1992) (Order granting injunction and award of sanctions) quoted in

*IN RE: Grievance Against Craig Tweedy,* note 1, *supra.*

len 3). The trial court granted the preliminary injunction against Respondent and his client.

¶ 19 Throughout the hearing before the PRT, Respondent defended the filing of Mullen 2, arguing that although Mrs. Mullen did not own the transfer and storage company, her property rights were adversely affected by the railroad company's action and she had a legitimate right to protect her property value. Respondent once again asserted fraud on the court by claiming that the railroad company, in concert with the Oklahoma Corporation Commission, withheld records concerning the crossing.

¶ 20 At the PRT hearing, Respondent was either unwilling or unable to acknowledge that his conduct with respect to the Mullen litigation violated any rules of professional conduct or was prejudicial to the administration of justice in any fashion. He repeatedly excused his own behavior and blamed his difficulties on either the federal judicial system, his opposing parties, or a favored relationship between the two.

■ ¶ 21 At the PRT hearing, Respondent admitted the underlying conduct set out in Count II of Complaint I, but denied that his actions violated any of the Oklahoma Rules of Professional Conduct or the Rules Governing Disciplinary Proceedings. We disagree. After losing on the merits of his claim on behalf of Mr. Mullen, Respondent filed a Motion to Vacate and two subsequent motions to reconsider directed at the denial of the Motion to Vacate. After his direct attack on the judgment in Mullen 1 failed, Respondent took a second and prohibited bite at the apple by asserting the same claim on behalf of Mrs. Mullen in state court. Once again, respondent alleged that the judgment in Mullen 1 was procured by fraud on the court.

¶ 22 By filing a state court action which sought to defeat the force of Mullen 1, Respondent launched an impermissible collateral attack on that judgment. By asserting allegations in Mullen 2, on behalf of Mrs. Mullen, contrary to the specific factual findings of the court in Mullen 1, Respondent

acted in a manner that was both frivolous and contrary to prescribed standards of conduct. Respondent's conduct clearly and convincingly violated Rules 3.1 and 8.4(d), ORPC, and such actions by Respondent were contrary to prescribed standards of conduct and grounds for discipline under Rule 1.3, RGDP.

### V. Complaint I, Count III, the Burggraf Case

■ ¶ 23 Respondent represented the Burggraf Corporation in a case that began in 1982, which Burggraf ultimately lost on the merits. During the course of the litigation, Respondent initiated six appeals from various rulings of the trial court. In a November 1990 opinion, the Tenth Circuit remanded one of the appeals to the Northern District to impose sanctions against Respondent for frivolous filings. In remanding, the Tenth Circuit stated:[3]

> The appeal in the instant case is frivolous in every respect. This is the sixth appeal concerning this case and the second that has been found to be frivolous. It is apparent to this court that Plaintiffs' actions in filing six appeals and making patently frivolous appeals establishes a pattern that cannot be tolerated.

¶ 24 Before the PRT, Respondent justified his numerous appeals in the Burggraf litigation by contending that the trial judge assigned to the case was biased on behalf of large companies and large law firms. He argued that this bias facilitated fraud upon the court.

¶ 25 At the PRT hearing, Respondent was either unwilling or unable to acknowledge that his conduct with respect to the Burggraf litigation violated any rules of professional conduct or was prejudicial to the administration of justice in any fashion. He repeatedly excused his own behavior and blamed his difficulties on either the federal judicial system, his opposing parties, or a favored relationship between the two.

¶ 26 Having reviewed the circumstances surrounding the multiple appellate filings in

---

**3.** The *Burggraf Corporation v. Goodyear Tire and Rubber, Inc.,* No. 90–50–91, (10th Cir. Nov. 21, 1990) quoted in *IN RE: Grievance Against Craig Tweedy,* note 1, *supra.*

the Burggraf case, this Court finds the evidence clearly and convincingly establishes that Respondent filed appeals without merit and incessantly re-hashed arguments that had been previously rejected. We conclude Respondent engaged in conduct that was frivolous and marked an unwarranted taxation on the resources of the courts in violation of Rules 3.1 and 8.4(d), ORPC, and such actions by Respondent were contrary to prescribed standards of conduct and grounds for discipline under Rule 1.3, RGDP.

## VI.  Complaint I, Count V,

### Communication with Person Represented by Counsel

¶ 27 Respondent contacted the general counsel of American Airlines by mail on two separate occasions in 1994. The first contact related to a settlement demand and the second contact took the form of a rambling and incoherent letter. At the time of the contacts, both Respondent and American Airlines were named parties in a suit pending in the Tenth Circuit in which American Airlines had sued Respondent. American Airlines was represented by counsel of record at the time of the contacts.

¶ 28 Count V was added when the first Complaint was amended in September, 1994, and alleged that Respondent violated Rule 4.2, ORPC, prohibiting an attorney from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter[.]" Before the PRT, Respondent denied that his actions violated Rule 4.2 and justified the contacts by asserting that he was not "representing a client" but was a party to the federal court action. The PRT found the evidence did not clearly and convincingly establish a violation of Rule 4.2, ORPC, but recommended Respondent receive a private reprimand.

¶ 29 It is clear any correspondence between Respondent and American Airlines should have been directed to the firm listed as counsel of record for the airline. However, we are mindful that Respondent was a

named party in the action and his communications were with another attorney, the general counsel for American Airlines. We agree with the PRT that the OBA failed to establish that Respondent violated Rule 4.2, ORPC, by the requisite clear and convincing evidence standard.

## VII.  Respondent's Remarks In Documents Before the PRT

¶ 30 In their findings of fact, the PRT indicated that Respondent filed a response to the first complaint in which he contended that certain members of the federal judiciary and members of the Professional Responsibility Commission should be disbarred. The PRT found that this violated Rule 8.2, ORPC, that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge[.]" The record is devoid of any attempts to show that the statements were false or made with reckless disregard as to their falsity. In the absence of a showing of falsity, the statements must be held to be speech on vital issues of self government protected by the first amendment. *State ex rel. Oklahoma Bar Association v. Porter*, 1988 OK 114, 766 P.2d 958. Accordingly, we decline to premise any discipline against Respondent based on these remarks

## VIII.  Disciplinary Action in Other Jurisdictions

¶ 31 As a result of Respondent's conduct in the Graham and Burggraf litigation, both the Northern District and the Tenth Circuit imposed substantial monetary sanctions against Respondent. Because of his actions in the Graham litigation, Respondent was disbarred from practice before the Tenth Circuit in December, 1993, that court noting that Respondent had "unnecessarily taxed the resources of the judiciary" and that "[i]n light of the prior warnings he has been given, his conduct can only be described as in bad faith."[4] Earlier, in January, 1993, Respon-

---

4. In an appeal in Graham 4, the Tenth Circuit said:

In our prior order granting sanctions, we assessed penalties to be paid American Airlines.

dent was suspended from practice before the Northern District for a period of three years. He was later denied reinstatement when he insisted upon arguing the lack of merit involved in the original suspension rather than focusing on corrective efforts and assuring the court there would be no repeat abuses.

¶ 32 The OBA filed a second Complaint against Respondent. Although designated as a separate complaint, the pleading raised no additional acts of professional misconduct. It alleged that Respondent had been disciplined in other jurisdictions, i.e., the Northern District and the Tenth Circuit, for the acts described in the first Complaint and alleged those same acts violated Rules 1.1, 3.1, 8.2, and 8.4(d), ORPC, and Rule 1.3, RGDP.

¶ 33 When a member of the Oklahoma Bar Association is disciplined in another jurisdiction, the findings, conclusions of law, or assessments of discipline are not binding on this Court. Rules 1.1 and 7.7, RGDP. This Court will conduct a de novo review to determine if the findings in the other jurisdiction are supported by the evidence or whether those findings furnish sufficient grounds for discipline in Oklahoma. Rule 7.7(b), RGDP.

¶ 34 While the adjudication in the other jurisdiction is not binding on this Court, it is prima facie evidence that the lawyer committed the acts described therein. In response, "[t]he lawyer may submit a certified copy of the transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma." In addition, "[t]he

In this case, however, we will assess penalties to be paid to this court. Mr. Tweedy has unnecessarily taxed the resources of the judiciary. In light of the prior warnings he has been given, his conduct can only be described as in bad faith. Pursuant to Local Rule 46.5, and our inherent authority to deter abusive litigation, we order Mr. Tweedy to pay the clerk of this court $3,000. Payment shall be made within twenty days of the date of this order. In addition, the clerk is directed to initiate disciplinary proceedings against Mr. Tweedy in accordance with Rule 46.5 and this Court's Plan for Attorney Disciplinary Enforcement.

lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline." Rule 7.7(b), RGDP.

¶ 35 At the PRT hearing, Respondent complained that the PRT violated his due process rights when it truncated his opportunity to present his case. As a result, Respondent moved for a mistrial at the conclusion of the PRT hearing. Respondent then filed a motion in which he reurged a previous request that the PRT panel members recuse themselves because they were prejudiced against him.

¶ 36 During the course of the PRT hearing, Respondent testified at length on his own behalf and offered another witness in an effort to explain why the multiple-filed actions and appeals in his various federal court cases were appropriate and justified. In addition, Respondent provided the PRT with voluminous briefs, appendices and answers cataloging his defenses to the Northern District disciplinary proceedings.[5] At a point in the PRT hearing, the presiding panel member prevented Respondent from presenting all his proposed witnesses when the presiding member concluded that Respondent intended to offer each witness to excuse the misconduct underlying the federal court discipline. Later in the hearing and after Respondent had testified over the course of two days attempting to establish the injustice of the Northern District discipline, the PRT refused to permit further testimony from Respondent.

*American Airlines, Inc. v. Tweedy,* 13 F.3d 404 (10th Cir.1993).
The disciplinary proceedings were initiated by a show cause order and upon his failure to respond, Respondent was disbarred by the Tenth Circuit by order filed March 9, 1994.

5. The panel noted several times during the course of the hearing that it had read all the materials Respondent provided and was thus aware of his underlying defenses and explanations relating to the federal court discipline.

¶ 37 Respondent contends that Rule 7.7(b), RGDP, provides him the right to present witnesses and testify on his own behalf "in the interest of explaining his/her own conduct or by way of mitigating the discipline which may be imposed upon him/her[.]" While Respondent is correct in this regard, the record reveals that Respondent was not submitting evidence to explain his conduct or to mitigate the severity of possible discipline. Rather, his testimony and witnesses were designed to establish that the evidence taken in the federal proceedings did not furnish sufficient grounds to discipline him in Oklahoma.[6] Under Rule 7.7(b), this purpose may only be accomplished by submitting a certified copy of the transcript of the evidence taken in the other jurisdiction.

¶ 38 Furthermore, even if the excluded testimony was indeed relevant to the issue of explaining his conduct or mitigation, it was properly excluded because it was cumulative.[7] Respondent presented the PRT with considerable testimony and volumes of documents and exhibits explaining his conduct in the three federal cases. The PRT did not abuse its discretion in failing to hear more.

¶ 39 In conclusion, we have examined the documents relating to the disciplinary proceedings in the Northern District and the Tenth Circuit. These documents are prima facie evidence that Respondent committed the acts described within the documents.[8]

Rule 7.7(b), RGDP. This conduct provided the PRT with sufficient grounds for recommending discipline in Oklahoma.

### IX. Enhancement

¶ 40 For purposes of enhancement of discipline, OBA asserted that Respondent previously received a private reprimand for trust account violations in May, 1991. In Respondent's Amended Answer, he admitted the discipline was received, although not that it was deserved. In his answer, he disputed the underlying facts of the trust account violations and attempted to revisit the merits of the previous discipline.

¶ 41 This Court refuses to revisit the merits of the 1991 discipline. We note that Respondent's efforts to minimize his role in the past behavior for which he received the reprimand is consistent with his approach to the other counts of the Complaint. This Court may consider the discipline Respondent received in 1991 in fashioning the degree of discipline to be imposed for his current misconduct. Rule 1.7, RGDP.

### X. Mitigation

¶ 42 There are several factors present in this bar matter that bear on the issue of mitigation. As already discussed, the crux of the complaints against Respondent originated in his handling of three separate matters in the Northern District and the Tenth Cir-

---

6. Before excluding Respondent's witnesses, the following exchange occurred between the presiding panel member and the Respondent:

    MS. HILL (presiding): I understand—if I understand you correctly, Mr. Tweedy, you want to offer these remaining three witnesses, as you did with Mr. Mullen, for the purpose of establishing that what you did in their cases was not a violation of the Rules of Professional Conduct; is that correct?

    MR. TWEEDY: The extent that it helps me show the fraud and the failures of jurisdiction and the due process violations that I am asserting are material to the issues before this Panel, yes.

    At the conclusion of the hearing, the presiding panel member asked Respondent whether he had any evidence in mitigation of the discipline. Respondent answered:

    MR. TWEEDY: For the record, I am not going to put on mitigation—something stated to be mitigation of—of punishment which would admit impliedly -

    MS. HILL: That's fine.
    MR. TWEEDY:—that I've done anything unethical.

7. Rule 6.12 of the Rules Governing Disciplinary Proceedings provides that the reception of evidence in a disciplinary proceeding "shall be governed generally by the rules in civil proceedings[.]" Title 12 O.S.1991, § 2403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of ... needless presentation of cumulative evidence[.]"

8. Respondent admitted the underlying conduct alleged in Complaint I, Count I (Graham litigation) and Count II (Mullen litigation). These admissions alone provide sufficient grounds for discipline by this Court without any reference to the disciplinary proceedings in the other jurisdictions.

cuit, between 1986 and 1993. Both jurisdictions in which the offending conduct occurred severely disciplined Respondent in 1993. In addition, both jurisdictions imposed substantial monetary sanctions against Respondent.

¶ 43 We point this out not to suggest that the Respondent has already been disciplined enough. To make that the test would be to give undue weight to Respondent's private interests, whereas the true test must always be the public welfare. *State ex rel. OBA v. Scanland,* 1970 OK 94, 475 P.2d 373. Where any clash of interest occurs, whatever is good for the individual must give way to whatever tends to the security and advancement of public justice. *Id.*

¶ 44 Because the purpose of attorney discipline proceedings is for the protection of the courts, the public and the legal profession, *State ex rel. Oklahoma Bar Association v. Minter,* 1998 OK 59, 961 P.2d 208, the discipline imposed by the Northern District and Tenth Circuit is relevant as a mitigating factor only to the extent that it serves those interests. In evaluating whether the earlier discipline has served those interests, we note that the last misconduct in this case occurred more than seven years ago. The OBA must advise this Court of all time-related grievances so that we may effectively evaluate a misconduct complaint and formulate the appropriate discipline. *See, State ex rel. Oklahoma Bar Association v. Wolfe,* 1997 OK 47, 937 P.2d 988, 996. Since the OBA has not informed us of additional grievances directed at Respondent, we must assume that Respondent, who continues to practice law, has essentially confined his misconduct to those allegations contained within the two complaints under consideration. It appears that the discipline meted out by the Tenth Circuit and the Northern District has effectively served to protect the courts, the public and the legal profession from continued offending conduct by the Respondent. Accordingly, we view the federal court discipline as a significant mitigating factor.

¶ 45 One other factor bears on the issue of mitigation. Although this proceeding was initiated more than eight years ago, it does not appear that the Respondent has been dilatory or uncooperative in any fashion. In fact, the record indicates Respondent has been quite willing to answer the complaints, even amending his answers in an effort to update them close to the time of hearing. He has complied with the OBA's requests for information and has virtually inundated the PRT and this Court with documentation. Respondent in no way appears eager to hide material from or avoid oversight by the OBA, the PRT or this Court.

### XI. Discipline

¶ 46 This Court possesses original and exclusive jurisdiction in bar disciplinary proceedings. Rule 1.1, RGDP. This Court's review is by de novo consideration of the entire record. *State ex rel. Oklahoma Bar Association v. Weeks,* 1998 OK 83, ¶ 12, 969 P.2d 347, 351. The PRT's findings, conclusions of law, or recommendations of discipline are not binding on this Court. *State ex rel. Oklahoma Bar Association v. Eakin,* 1995 OK 106, 914 P.2d 644, 648. "The ultimate responsibility to impose discipline in a case before this Court is ours alone." *Id.*

[14] ¶ 47 An attorney must be zealous in his advocacy on behalf of his clients, but the rule is not without limits and the attorney must remain within the bounds of the law and ethical considerations. Respondent's conduct in the Graham, Mullen and Burggraf litigation exceeded these bounds. His conduct in these cases unquestionably compels us to impose a strict discipline. Perhaps the single most troubling aspect of Respondent's unprofessional conduct is his unwillingness to admit or his inability to realize the vexatious and abusive nature of his filings during this time. Our reading of the record indicates that it was this factor, more than any other, that caused the PRT to recommend that Respondent be disbarred.

[15] ¶ 48 In imposing discipline, our purpose is not to punish the involved attorney, but to inquire into his continued fitness to practice law with a view to safeguarding the public, the courts and the legal profession. *State ex rel. Oklahoma Bar Association v. Badger,* 1995 OK 113, 912 P.2d 312. With that purpose in mind, we must weigh or balance a myriad of factors in crafting an

appropriate discipline, some that warrant increasing the severity of the discipline to be imposed and others mitigating the severity.

¶ 49 Respondent has previously received a private reprimand from this Court for trust violations in May of 1991. Also, to this day Respondent still refuses to acknowledge that his actions in the three federal matters violated any rule of professional conduct. Both of these factors warrant increasing the severity of the discipline.

¶ 50 However, Respondent has consistently cooperated with the OBA throughout this proceeding. Also, Respondent has apparently practiced law throughout the pendency of this matter without any further grievances. Both these factors tend to mitigate the severity of the punishment.

¶ 51 The PRT has recommended that Respondent be disbarred. We reject that recommendation for two primary reasons. First, when determining discipline for attorney misconduct, we compare the circumstances presented with those of previous disciplinary proceedings. *State ex rel. Oklahoma Bar Association v. Bolton,* 1995 OK 98, 904 P.2d 597. The professional misconduct of the Respondent occurred in his handling of three separate matters in federal court between 1986 and 1993. In those matters, Respondent exceeded the bounds of zealous advocacy by pursuing baseless legal claims and remedies. Although his conduct in this regard posed a serious potential for interference with the administration of justice, it does not warrant disbarment. A review of cases in which this Court imposed disbarment as a discipline reveals the existence of

conduct of a more serious degree of culpability.[9]

¶ 52 Second, we are persuaded that the discipline imposed by the Northern District and Tenth Circuit (the jurisdictions in which the misconduct occurred) has effectively served to deter Respondent from subsequent acts of professional misconduct. Respondent has apparently practiced law in the intervening seven years without any reported grievances. In view of this recent record, we are convinced that we can fulfill our purpose to protect the public and the courts generally by crafting a discipline short of disbarment.

¶ 53 For the reasons stated herein, Respondent is suspended from the practice of law for a period of six (6) months from the effective day the of this pronouncement. Respondent is ordered to pay costs in the amount of $1,340.25 relating to the investigation and disciplinary proceedings against him not later than ninety (90) days after this opinion becomes final.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF SIX (6) MONTHS FROM THE EFFECTIVE DAY OF THIS PRONOUNCEMENT; AND, COSTS IMPOSED.**

¶ 54 SUMMERS, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, KAUGER, and BOUDREAU, JJ., concur.

¶ 55 OPALA, J., concurs in disciplining the respondent but dissents from the lenient sanction imposed.

---

**9.** A few examples of conduct which this Court has determined warrants disbarment include: (1) multiple incidences of fraud, misrepresentation, incompetence, negligence, unauthorized practice of law, etc., *State ex rel. Oklahoma Bar Association v. Wolfe,* 1997 OK 47, 937 P.2d 988; *State ex rel. Oklahoma Bar Association v. Thomas,* 1995 OK 145, 911 P.2d 907; *State ex rel. Oklahoma Bar Association v. Hensley,* 1983 OK 32, 661 P.2d 527; (2) conviction of wire fraud and money laundering, *State ex rel. Oklahoma Bar Association v. Brunson,* 1996 OK 32, 912 P.2d 876; (3) forging judge's signature on notice of guardianship proceeding, *State ex rel. Oklahoma Bar Association v. Brown,* 1993 OK 39, 863 P.2d 1108;

(4) practice of law while bar license suspended for four years, continuing to advertise in phone book, and lying to clients about bar license, *State ex rel. Oklahoma Bar Association v. Downing,* 1993 OK 44, 863 P.2d 1111; (5) conversion of client funds, *State ex rel. Oklahoma Bar Association v. Herlihy,* 1991 OK 123, 827 P.2d 164; (6) conviction of felonies of possessing and transferring unregistered firearms, *State ex rel. Oklahoma Bar Association v. Floyd,* 1991 OK 34, 812 P.2d 378; and, (7) solicitation of a bribe while serving as a county judge, *State ex rel. Oklahoma Bar Association v. James,* 1969 OK 119, 463 P.2d 972.

¶ 56 WINCHESTER, J., with whom OPALA, J., joins, concurring in disciplining and dissenting from disposition:

¶ 57 WATT, J., not participating.

WINCHESTER, J., with whom OPALA, J., joins, concurring in disciplining and dissenting from disposition:

¶ 1 I would follow the recommendation of the P.R.T. and disbar respondent.