OSCN Found Document:OKLAHOMA BAR ASSOCIATION v BOYD

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLAHOMA BAR ASSOCIATION v BOYD
2025 OK 30
Decided: 04/29/2025
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 30, __ P.3d __

 
 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant
v.
MOSEMARIE DORA BOYD, Respondent

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Pursuant to Rule 7.7 of the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2021, Ch. 1, App. 1-A, the Complainant, the Oklahoma Bar Association transmitted documentation to this Court detailing the Respondent's, Mosemarie Dora Boyd, 2023 suspension of six months from the practice of law in Arkansas. After review of the record, we hold there was sufficient evidence to support the Arkansas ruling. We hold, Mosemarie Dora Boyd committed certain acts of professional misconduct related to a guardianship action she filed in Arkansas. These acts also violate certain rules of the Oklahoma Rules of Professional Conduct, 5 O.S. 2021, Ch.1, App. 3-A. We suspend her license to practice law for six months commencing on September 27, 2024. No costs have been assessed.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS COMMENCING ON SEPTEMBER 27, 2024;  NO COSTS ASSESSED

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Sheila J. Naifeh, Tulsa, Oklahoma, for Respondent.

COMBS, J.:

I. FACTS AND PROCEDURAL HISTORY

¶1 The Respondent, Mosemarie Dora Boyd (Boyd/Respondent), was admitted to practice law in Arkansas and Oklahoma in 2008 and 2010, respectively. She has no previous discipline in Oklahoma. On January 30, 2023, the Arkansas Supreme Court, Committee on Professional Conduct, Panel D (OPC) issued its Findings and Order suspending the Respondent from the practice of law for six months and charged costs. The suspension concluded at the end of July 2023. The Respondent timely notified the Oklahoma Bar Association (OBA/Complainant) of her suspension and kept it informed of its appeal status per Rule 7.7(a), Oklahoma Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2021, Ch. 1, App. 1-A. The OPC found the Respondent had violated Rules 3.1 and 8.4(d) of the Arkansas Rules of Professional Conduct (ARPC) for her actions related to a guardianship matter she filed. The guardianship matter was placed under seal. The Respondent filed a Notice of Appeal on March 1, 2023, and commenced an appeal on May 30, 2023 in the Arkansas Supreme Court. A year later, May 30, 2024, the Arkansas Supreme Court dismissed her appeal for failure to file her brief after repeated extensions were granted. She filed various motions for reconsideration thereafter, which the Court denied. Her last denial was on September 12, 2024.

¶2 On September 27, 2024, the Complainant filed its Notice of Disciplinary Action in Another Jurisdiction with this Court, pursuant to Rule 7.7, RGDP. On January 31, 2025, the Respondent filed a Waiver of Tribunal Hearing, Brief in Mitigation, and Brief regarding Final Order of Discipline. On the same day, the Arkansas Supreme Court transmitted to this Court some 1,612 pages of the original record in the Arkansas disciplinary proceeding. The record from the Arkansas Supreme Court disciplinary matter and the Respondent's briefs and her filings in the instant matter were placed under seal by this Court on January 23, 2025. The Complainant filed its brief and supporting appendix on February 14, 2025, which were not placed under seal.

¶3 Because the matter involved a guardianship and the documents submitted by the Arkansas Supreme Court, including the disciplinary record, have been placed under seal, a full account of the underlying case is not included in this opinion. The general facts relevant to the underlying disciplinary matter arose from an ex parte emergency guardianship petition filed by Respondent against her ex-boyfriend (of two months) and his ex-wife to obtain guardianship of their three minor children. 

¶4 The OPC conducted an investigation. A Panel of the OPC held a hearing. Three witnesses were called to testify, including Judge Magness and the Respondent. At the close of the hearing, the attorney for the OPC asked for the Respondent to be suspended for five years. The Panel members instead voted to suspend her for six months. She was found to have violated Rule 3.1, ARPC, which provides, in pertinent part:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

and Rule 8.4(d), ARPC which provides:

It is professional misconduct for a lawyer to:

. . . .

(d) engage in conduct that is prejudicial to the administration of justice;

These Rules are identical to Rules 3.1 and 8.4(d), Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2021, Ch. 1, App. 3-A.

¶5 The Rule 3.1, ARPC violation was based upon her prosecuting a guardianship action on allegations of sexual, physical and psychological abuse of the three children by the ex-boyfriend (father of the children) without sufficient evidence to support any of her claims. Her nearly 200-page original petition mainly focused on her accusations of sexual abuse. The later submitted substitute petition also focused on sexual abuse allegations. The Rule 8.4(d), ARPC violation was based upon her filing the original petition without sealing it, and including the full names, addresses, dates of birth and a picture of the three children in violation of Arkansas Rules. In addition, she provided a copy of the original petition to the children's school principal the day after she filed it. After reading the petition, Judge Magness sealed it sua sponte that same day. The Respondent claimed not to have known it was sealed by the judge prior to delivering a copy to the principal.

II. STANDARD OF REVIEW

¶6 Our responsibility in bar matters is exercised not for the purpose of punishing an offending lawyer, but to assess their continued fitness to practice law. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31212 P.3d 1186State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94Kinsey, supra, 2009 OK 31. Before arriving at appropriate discipline, however, we must also consider the deterrent effect upon both the offending respondent and other attorneys who might contemplate similar conduct in the future. State ex rel. Okla. Bar Ass'n v. McMillian, 1989 OK 16770 P.2d 892State ex rel. Okla. Bar Ass'n v. Hall, 1977 OK 117567 P.2d 975Doris, supra, 1999 OK 94State ex rel. Okla. Bar Ass'n v. Thomas, 1995 OK 145911 P.2d 907Doris, supra, 1999 OK 94

III. ANALYSIS

¶7 The instant proceeding is predicated on misconduct previously adjudicated in another jurisdiction, i.e., Arkansas Supreme Court, Committee on Professional Conduct, Panel D. While the adjudication in the other jurisdiction is not binding on this Court, it is prima facie evidence that the lawyer committed the acts described therein. State ex rel. Okla. Bar Ass'n v. Tweedy, 2000 OK 3752 P.3d 1003

When a lawyer is the subject of a final adjudication in a disciplinary proceeding, except contempt proceedings, in any other jurisdiction, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5) days of receiving such documents. The Chief Justice shall direct the lawyer to show cause in writing why a final order of discipline should not be made. A written response from the lawyer shall be verified and expressly state whether a hearing is desired. The lawyer may in the interest of explaining his or her conduct, or by way of mitigating the discipline to be imposed upon him or her, submit a brief and/or any evidence tending to mitigate the severity of discipline. The lawyer may submit a certified copy of any transcripts of the evidence taken during disciplinary proceedings in the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline.

A bar disciplinary matter is unique. Because it is not civil in nature, the full faith and credit doctrine, which affords preclusive effect to the judgment of our sister-state courts, does not require us to accord interjurisdictional preclusion to the adjudication of misconduct. State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551Id. The rule limits a respondent's attack on the other jurisdiction's fact-finding to the evidence contained in a certified copy of the transcript of the other jurisdiction's proceedings. Id. Therefore, the facts that resulted in the imposition of discipline by the other jurisdiction cannot be relitigated, but can be only reviewed in the context of the evidence previously presented in the other jurisdiction. Id. The rule allows the respondent to use the transcript(s) of the other disciplinary proceeding to support a challenge that the findings of that disciplinary ruling were not supported by the evidence or that it did not furnish sufficient grounds for discipline in Oklahoma.

¶8 The Respondent's (sealed) brief largely focuses on her challenge of the underlying guardianship case, namely, that the procedure related to the Rule 11 sanctions portion of that matter was not adequately followed. She further asserts she was denied due process. First, the OPC trial panel determined that the questions before it concerned violations of the ARPC and would not include questions regarding whether a judge violated the law or misinterpreted the law. Similarly, we are here to determine if there was sufficient evidence presented at the OPC hearing to support its findings of discipline. We are not here to relitigate the disciplinary matter or the underlying guardianship case. Having not properly appealed either decision, the Respondent is left with challenging the evidence presented at that hearing and providing evidence in support of mitigation. Whether or not the trial court properly followed Rule 11 sanctions was expressly not addressed by the OPC and is not before this Court. Like the OPC, we are concerned with only the lawyer's professional conduct. Second, the Respondent argues her due process rights were violated for several reasons, 1) the OPC failed to attach a copy of her "controlling" substitute petition to its Complaint, 2) the OPC arbitrarily imposed Ark. Sup. Ct. P. Regulating Prof'l Conduct, § 8(A), discovery deadlines, which she asserts is unconstitutionally vague, and 3) the OPC failed to strictly comply with Ark. Sup. Ct. P. Regulating Prof'l Conduct § 9(A)(5) service rule because it did not send her its January 30, 2023, Findings and Order by certified mail. Again, all these matters, baseless or not, could have been addressed in a timely appeal. For the following reasons we do not find any merit to her assertions that her due process rights were violated. The substitute petition which was filed over a month after the original petition in the guardianship case was an attempt to remove salacious and irrelevant material to avoid sanctions. The trial court stated in its order that it based its decision to grant sanctions on the substitute petition and the September 30, 2021 trial. The court determined "[e]ssentially, the entire Petition, Substitute Petition, and the trial is evidence of sanctionable conduct." The OPC attached a copy of the original petition to its Complaint, however, a copy of the substitute petition is also found in the Arkansas record. With only a few exceptions, the substitute petition contained the same accusations as the original petition and all were determined to be unfounded by the trial court. Further, we are not determining here for the first time whether an Arkansas Rule on discovery is unconstitutionally vague. The Complaint in the Arkansas disciplinary proceeding was filed on December 29, 2021. The Respondent filed her affidavit of response on June 3, 2022. On or before, July 28, 2022, she was represented by counsel who filed a Notice of Appeal which requested a hearing. The OPC sent notice of the December 16, 2022, hearing on August 1, 2022. So for almost a year the Respondent was aware of the Complaint and was represented by counsel who had plenty of time to prepare for the hearing. The Respondent waited until only a few days before the hearing to fire her counsel and then file her own motion to enlarge time on December 14, 2022. The OPC denied this request stating that she was moving to file documents already in the record, she was adding materials regarding sanctions (which the OPC was not going to address), provided no explanation for the need to file any new materials, and she made arguments that were available to her when she made her first response. The OPC also referred to its prior scheduling order whose deadline had previously expired. The Respondent was not denied any due process right by the OPC's refusal to allow last minute filings. Lastly, the Respondent asserts the OPC failed to strictly comply with procedural rules for providing service of its January 30, 2023, Findings and Order by certified mail. She argues this also somehow violated her due process rights. It is clear from the record that the Respondent received notice of the Findings and Order; she appealed this ruling and filed a Notice of Appeal herself on March 1, 2023. The Arkansas Supreme Court dismissed her case for failing to timely file her brief and not on grounds that her appeal was untimely. Again, we do not find the Respondent was denied due process.

¶9 The record reflects that the Respondent had ample time to prepare a defense in the Arkansas proceedings. A hearing, which she had notice of for months, was timely held. Witnesses were called and testimony was given. Exhibits were introduced. Afterwards, the Respondent filed multiple post-trial motions. The Panel reviewed her arguments and determined she was afforded adequate due process. It found that even under her cited caselaw, requiring adequate notice, and her own admissions, she had notice of the December 16, 2022 hearing. She also had a meaningful opportunity to be heard. Under our jurisprudence, compliance with due process simply requires that the OBA allege facts sufficient to put the attorney on notice of the charges and allow an opportunity to respond to the allegations. State ex rel. Okla. Bar Ass'n v. Bednar, 2019 OK 12441 P.3d 91State ex rel. Okla. Bar Ass'n v. Giger, 2003 OK 6172 P.3d 27State ex rel. Okla. Bar Ass'n v. Johnston, 1993 OK 91863 P.2d 1136

¶10 The lengthy record submitted by the Arkansas Supreme Court includes a complete copy of the transcript of the December 16, 2021, hearing and exhibits; both admitted exhibits and proffered exhibits that were excluded by the Panel. Within the submitted record is a copy of the original petition filed in the guardianship case as well as the substitute petition. A transcript of the guardianship proceedings is also found in the record. This record supports the OPC's findings that Rules 3.1 and 8.4(d), ARPC were violated by the misconduct of the Respondent.

¶11 The Respondent and the father of the children were long time neighbors. The father and his wife (mother of the children) divorced, and father was granted sole custody of all three children. Thereafter, in March 2021, the father and the Respondent started a relationship which soon became romantic. The relationship lasted for two months. It ended after father found out that the Respondent had reported him to a child abuse hotline. In May 2021, the Respondent contacted the hotline and reported abuse. The case was referred to DHS which referred the matter for an interview at a child advocacy center. On May 27, 2021, all three children were interviewed at the center. The record reflects that the interview determined the claims were unsubstantiated and no further DHS or any police investigation was ever commenced. Over the next two months the Respondent hounded the father's extended family and the ex-wife. On August 2, 2021, the Respondent filed her guardianship petition. A month later, she filed a substitute petition.

¶12 In the November 9, 2021 sanctions order, Judge Magness highlighted some of the alleged sexual abuse allegations made by the Respondent in both her petition and substitute petition. Judge Magness concluded in his order that the Respondent "viewed regular, normal, routine interactions between a father and his children and sexualized the interactions. In summary, there simply was no credible evidence to support any of the allegations in the Substituted Petition." Judge Magness also testified at the Arkansas disciplinary hearing. He testified that at trial he found out her allegations of abuse were grossly exaggerated and false. He found that the Respondent sexualized everything, "she sees what she wants to see and hears what she wants to hear," and he believed that she was motivated by either "delusions with good intentions or bad intentions. But it's completely false." He could find no way a reasonable person could have come to the same conclusions as the Respondent concerning the allegations she made. Judge Magness was also concerned about the fact that the Respondent continued a sexual relationship with the father even after she claimed to believe he was molesting his children. The Respondent testified that she had to continue a sexual relationship with the father in order to obtain more information of abuse.

¶13 The Respondent filed her original petition which included the names, dates of birth, addresses and a picture of the children. She did not move to seal the petition. It was filed on August 2, 2021, and Judge Magness had to seal it sua sponte the next day. The Respondent's excuse for not sealing it was that she overlooked it. The day after she filed the petition she went to see Judge Magness who had not yet had time to read it. Soon after they met, Judge Magness said another judge alerted him to the contents of the petition which prompted him to seal it sua sponte. He then had an email sent to the Respondent informing her that he placed the petition under seal. The Respondent was leaving town on a long trip after leaving the courthouse that day and claims she did not see the email that day. She also delivered a copy of the unsealed petition to the children's principal on her way out of town.

¶14 The Respondent's excuse for failing to seal the petition is not credible. The petition delivered to the principal was approximately 200 pages long. Unlike the later substitute petition, it contained many explicit, graphic and irrelevant sexual anecdotes of her and the father's sex life. However, like the substitute petition, it also contained many wild conjectures of perceived sexual abuse of the children.

¶15 The record supports the findings of the OPC Panel that the petition presented allegations of abuse not supported by the evidence. The petition and substitute petition contained outrageous allegations of abuse by the father. The petition also contained irrelevant graphic sexual content unrelated to any allegations of abuse. This required both father and mother to hire counsel to defend against such allegations and caused considerable embarrassment and stress to the family. We hold, the OPC Panel correctly found that the Respondent violated Rule 3.1, ARPC, as well as the identical Rule 3.1, ORPC and her conduct merits professional discipline in Oklahoma. Further, a finding by the Panel that the Respondent violated Rule 8.4(d), ARPC is supported by the record. To establish a violation of Rule 8.4(d), ORPC the interference with the administration of justice must be serious and must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct." State ex rel. Okla. Bar Ass'n v. Smalley, 2018 OK 97432 P.3d 1048State ex rel. Okla. Bar Ass'n v. Minter, 2001 OK 6937 P.3d 763

¶16 In State ex rel. Okla. Bar Ass'n v. Bedford, 1997 OK 83956 P.2d 148Id. Bedford also presented many affidavits from professionals attesting to his character. Id. ¶19. However, we noted that none appeared to have any knowledge of the facts involved in that disciplinary proceeding. He was suspended from the practice of law for two years and one day. Id. ¶20.

¶17 In State ex rel. Okla. Bar Ass'n v. Tweedy, 2000 OK 3752 P.3d 1003Id. ¶22. We also noted that the lawyer had previously been disciplined by this Court in 1991. Id. ¶41. In determining discipline, we found his actions had posed a serious potential for interference with the administration of justice but it did not warrant disbarment. Id. ¶52. We were convinced we could fulfill our purpose in protecting the public and the courts by imposing a suspension of six months. Id. ¶¶52-53.

IV. MITIGATION

¶18 The Respondent filed a separate brief in mitigation. She claims she was acting in good faith when she filed the guardianship action and no material injuries resulted from her conduct. We disagree. The circumstances surrounding the filing of the unsealed petition and the content of the petition, as well as the substitute petition, do not lean in favor of a good faith effort to protect these minor children. As far as injury, the father and mother were traumatized by these allegations. In particular, the delivery of this defamatory pleading to the school principal. This caused considerable embarrassment to them, and the mother clearly had anxiety related to the allegations and the harassment she sustained by the Respondent. The Respondent's expert told her the allegations would not warrant an investigation into sexual abuse and she was told by a DHS attorney that she should place the petition under seal, which she did not do. The petition was also filed after the allegations were found to be unsubstantiated following the interview of the children. None of these factors deterred the Respondent from pursuing the unsupported guardianship action.

¶19 The Respondent proffered certain documents to the OPC. These included the Respondent's resume and letters of support. After a review of these documents, it is clear the Respondent has done much in her legal profession and has support from some members of the legal and law enforcement communities. However, only one letter indicates the author had any knowledge of the events related to this disciplinary matter.

¶20 In favor of the Respondent, we note that she has not been subject to any previous discipline in Oklahoma. She also timely notified the OBA of the Arkansas disciplinary action and kept it informed of its status during her appeal of that matter. In addition, the Complainant states the Respondent has fully cooperated in these proceedings.

V. DISCIPLINE

¶21 In a reciprocal disciplinary matter, this Court is not constrained to imposing the same discipline as that imposed by another jurisdiction. State ex rel. Okla. Bar Ass'n v. Wintory, 2015 OK 25350 P.3d 131Tweedy, we imposed a six-month suspension for a lawyer who we determined had adequately been deterred from committing the same professional misconduct. The lawyer in Tweedy, however, had multiple counts of frivolous filings and we noted he had been previously disciplined by this Court. The Respondent has not been previously disciplined in Oklahoma and her professional misconduct is all related to this string of poor judgment related to a single guardianship action. The circumstances surrounding this case seem very specific to her personal relationship. At the December 16, 2022 disciplinary hearing, the OPC attorney was concerned that these events could occur again. The lawyer noted, the Respondent's testimony was that she would do it again because she could never walk away and do nothing in good conscience. The Respondent's mitigation brief now, however, states that this has been a learning experience "and she will take great care to ensure that this never happens again." In addition, a review of our records indicates she has not represented anyone in the courts of Oklahoma since approximately August 3, 2022. In consideration of our jurisprudence and the fact she has already completed a six-month suspension in Arkansas over a year ago and does not appear to have practiced law in Oklahoma since a few months prior to her discipline there, we hold she should receive a suspension from the practice of law in Oklahoma for six months commencing on September 27, 2024.

VI. CONCLUSION

¶22 For the above reasons we hold, that in this reciprocal disciplinary matter there was sufficient evidence to support the Arkansas OPC discipline and the Respondent's conduct also violated Rules 3.1 and 8.4(d), ORPC. We impose a six month suspension of the Respondent's license to practice law in Oklahoma commencing on September 27, 2024. The OBA has not filed an Application to Assess Costs in this proceeding, therefore we assess no costs to the Respondent.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS COMMENCING ON SEPTEMBER 27, 2024; 

NO COSTS ASSESSED

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson, Combs, Gurich, Darby, and Kane, JJ. - Concur

FOOTNOTES

Tweedy we reviewed cases wherein disbarment was imposed and determined they revealed a more serious degree of culpability:

A few examples of conduct which this Court has determined warrants disbarment include: (1) multiple incidences of fraud, misrepresentation, incompetence, negligence, unauthorized practice of law, etc., State ex rel. Oklahoma Bar Association v. Wolfe, 1997 OK 47937 P.2d 988State ex rel. Oklahoma Bar Association v. Thomas, 1995 OK 145911 P.2d 907State ex rel. Oklahoma Bar Association v. Hensley, 1983 OK 32661 P.2d 527 State ex rel. Oklahoma Bar Association v. Brunson, 1996 OK 32912 P.2d 876State ex rel. Oklahoma Bar Association v. Brown, 1993 OK 39863 P.2d 1108State ex rel. Oklahoma Bar Association v. Downing, 1993 OK 44863 P.2d 1111State ex rel. Oklahoma Bar Association v. Herlihy, 1991 OK 123State ex rel. Oklahoma Bar Association v. Floyd, 1991 OK 34812 P.2d 378State ex rel. Oklahoma Bar Association v. James, 1969 OK 119463 P.2d 972

Id. ¶51 n.9, 52 P.3d at 1013 n.9.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105